UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| BENNIE ADAMS, | : | CASE NO. 4:21-cv-00158 |
| | : | |
| Petitioner, | : | OPINION & ORDER |
| | : | [Resolving Docs. 21, 22 & 26] |
| v. | : | |
| | : | |
| LASHANN EPPINGER, | : | |
| | : | |
| Respondent. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

An Ohio jury convicted Petitioner Bennie Adams of murdering Gina Tenney and recommended the death penalty. Adams successfully appealed his death sentence and now serves 20-years-to-life in prison. But because Adams believes Ohio court proceedings violated his federal rights, Adams now asks this Court for habeas corpus relief.

This Court first examines whether Adams's petition is time barred under AEDPA's one-year statute of limitations. Although Adams failed to file this habeas petition within the one-year limit, this Court finds that Ohio waived an available statute-of-limitations defense.

Turning to the merits of Adams's habeas petition, unless excused, procedural default stops consideration of two of Adams's claims. Adams responds that procedural default should not stop consideration of his defaulted claims because sufficient evidence suggests he is actually innocent. Unfortunately for Adams, any fair consideration of the evidence instead supports finding that Adams murdered Gina Tenney.

Among the limited number of not-procedurally-defaulted claims, Adams makes one good claim. He offers sworn affidavit evidence that deliberating jurors somehow knew about Adams's conviction of a separate rape, kidnapping and robbery. As more fully discussed,

Case No. 4:21-cv-00158
GWIN, J.

the Court finds that Adams had the right to have this issue examined.

For the following reasons, the Court conditionally **GRANTS** Adams's petition in part.

Unless Ohio holds a hearing on Adams's juror-bias claim within 150 days of this order,

Adams may apply for release from custody.  The Court **DISMISSES** in part and **DENIES** in

part the rest of Adams' claims.  Finally, the Court **AFFIRMS** the magistrate judge's decision

to deny Adams's discovery request.

## I.    Background

In 2008, an Ohio jury convicted Adams of the 1985 murder of Gina Tenney.  Tenney

lived above Adams in a Youngstown area duplex.  On December 29, 1985, Adams murdered

Tenney before casting her body in the Mahoning River.

Despite substantial evidence of Adams's involvement, police did not initially charge

Adams with Tenney's murder.  But in 1986, Ohio convicted Adams of an unrelated rape,

kidnapping and robbery.  Adams served nearly 18 years in prison on this separate rape,

kidnapping and robbery.

Shortly after Adams was released from the rape, kidnapping and robbery conviction,

an Ohio program made DNA testing resources available to help police with unsolved crimes.

At the time of the original Gina Tenney murder investigation, this DNA testing had not been

available.

In 2007, police submitted the Tenney case's evidence to state investigators for this

new DNA testing.  After using the now-available DNA testing, the testing matched Adams's

DNA to semen found with Tenney.  So, in October 2007, a Grand Jury indicted Adams for

Tenney's murder.

In October 2008, a jury found Adams guilty of aggravated murder and recommended

Case No. 4:21-cv-00158
GWIN, J.

a death sentence.  The trial court adopted the jury's recommendation.

## II.    Discussion

### A.    Timeliness

Adams filed his federal habeas petition late.  But although federal law limits the time to file a habeas petition, the State appears to have waived this statute-of-limitations defense. So, the Court does not dismiss Adams's petition solely because it arrived late.

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a state prisoner to file any federal habeas corpus petition within one year after the trial court's judgment becomes final.[1]  But federal courts discount from AEDPA's one-year limit any time that passes while a petitioner's properly filed state postconviction petition remains pending.[2]

AEDPA's time limit does not completely bar habeas courts from considering late petitions.  Instead, the AEDPA limit gives state respondents an affirmative defense.[3]  But if a respondent fails to raise its statute-of-limitations defense, the habeas court may choose to dismiss a late petition sua sponte.[4]

This case's procedural history reveals that Petitioner Adams failed to file this AEDPA petition before AEDPA's one-year window closed:

- On June 11, 2012, while his Ohio direct appeal remained pending, Adams filed a state postconviction petition.[5]  On April 23, 2014, the state trial court stayed this

---

[1] 28 U.S.C. § 2244(d)(1)(A).

[2] 28 U.S.C. § 2244(d)(2).

[3] Day v. McDonough, 547 U.S. 198, 209 (2006).

[4] Id. at 210.  Before deciding to dismiss a late petition, courts allow the parties to present their positions.  Courts also consider whether the petitioner would suffer significant prejudice if the Court itself raises the timeliness sua sponte.  Finally, courts decide whether reaching the petition's merits or dismissing the untimely petition would best serve the interests of justice.  Id.

[5] Doc. 10-2 at 1357 (PageID 2977).

Case No. 4:21-cv-00158
GWIN, J.

postconviction proceedings during Adams's direct appeal.[6]

- On October 1, 2015, on direct appeal, the Ohio Supreme Court affirmed Adams's conviction but vacated his death sentence.[7]

- On June 6, 2016, the trial court resentenced Adams to 20-years-to-life incarceration. Adams did not appeal his June 6, 2016, resentencing. So, on July 6, 2016, when Adams's time to appeal his new sentence expired, Adams's new judgment became final.[8]

- The Ohio trial court never issued any opinion or judgment on Adams's 2012 state post-conviction petition either before or after Adams's resentencing. Petitioner's counsel says that in an off-the-record meeting shortly before or after resentencing, the trial court suggested that Adams's counsel should refile any petition for state postconviction relief after the resentencing.[9]

- On June 5, 2017, Adams filed a second state postconviction petition attacking his new resentencing judgment.[10]

- On January 21, 2020, Adams's state postconviction bid on the new judgment ended unsuccessfully when the Ohio Supreme Court declined jurisdiction.

Adams filed this petition on January 20, 2021.[11] Relative to the one-year AEDPA statute of limitations, Adams had allowed 334 days to pass after resentencing before filing the 2017 state postconviction petition and had allowed an additional 365 days to pass after the state postconviction denial on the resentencing became final.

Whether Adams filed his AEDPA habeas petition within the one-year statute of limitations turns on whether Adams's 2012 postconviction petition from his original conviction continues to toll the federal habeas statute of limitations even though the Ohio Supreme Court vacated the first sentence and a new sentencing judgment replaced it.

---

[6] Doc. 10-3 at 154 (PageID 3448).

[7] State v. Adams, 45 N.E.3d 127 (Ohio 2015).

[8] See generally OHIO R. APP. P. 4 (allowing 30 days to appeal a final judgment); 28 U.S.C. § 2244(d)(1)(A).

[9] Doc. 30 at 1–2 (PageID 6241–42).

[10] Doc. 10-3 at 155 (PageID 3449).

[11] Doc. 1.

- 4 -

Case No. 4:21-cv-00158
GWIN, J.

Only if the postconviction petition from the first judgment continued to toll the AEDPA statute of limitations after the successful appeal and resentencing judgment would Adams's petition be AEDPA timely. If Adams's first state postconviction petition continued to toll the AEDPA one-year limit, Adams filed his federal habeas petition with a day to spare. But if AEDPA's clock ran from when the second sentence judgment became final, Adams filed this petition nearly a year late.

Neither party addressed timeliness. So, the Court ordered additional briefing on whether it should dismiss Adams's petition sua sponte.[12] In response, both parties said that Adams had filed his AEDPA petition on time.[13]

But AEDPA's tolling provision demands a different conclusion. For AEDPA's purposes, "the sentence is the judgment."[14] So when a state resentences an inmate, the inmate may "challenge ... either the new sentence or the undisturbed conviction."[15] Resentencing "also restarts AEDPA's one-year window to challenge that judgment."[16]

Adams's resentencing therefore ended his 2012 Ohio postconviction petition's pendency. When the trial court resentenced Adams in 2016, Adams received a new judgment, which his 2012 petition had not challenged. Indeed, Adams took the position that the 2012 petition "was deemed moot when Adams was resentenced."[17] Adams further

---

[12] Doc. 28.

[13] Docs. 29, 30.

[14] Crangle v. Kelly, 838 F.3d 673, 678 (6th Cir. 2016) (quoting Burton v. Stewart, 549 U.S. 147 (2007)).

[15] Id.

[16] Id. Respondent points out that a limited, favorable resentencing does not reset AEDPA's one-year clock. But although favorable, the Ohio Supreme Court's decision to completely vacate Adams's death sentence is hardly a "limited resentencing ... such as in a sentence reduction under [the compassionate-release statute] ... ." Id.; see also Freeman v. Wainwright, 959 F.3d 226 (6th Cir. 2020) (state court's decision to "str[i]k[e] a single sentence from its original [sentencing] journal entry without even holding a hearing ... was limited")..

[17] Doc. 10-3 at 156 (PageID 3450).

- 5 -

Case No. 4:21-cv-00158
GWIN, J.

characterized the 2017 petition as a "timely, *first* petition" filed "as a result of the new sentenc[e]."[18]  The state postconviction court dealing with the 2017 second state postconviction petition, in turn, analyzed Adams's petition under the Ohio statute governing first petitions.[19]

AEDPA's text further supports this conclusion.  AEDPA tolls the time a properly filed state postconviction petition remains "pending."[20]  In this context, "pending" means "awaiting decision."[21]  Although the state court never disposed of Adams's 2012 postconviction petition on the record, Adams's 2012 petition was no longer awaiting decision—and therefore no longer pending—after resentencing.

Adams says that apart from removing the death-sentence claims, the 2017 petition is "identical" to the 2012 petition.  According to Adams, his 2017 state court postconviction petition simply refiled his 2012 petition "for ease of reference" to clarify "which claims were still pending."[22]

Not so.  The 2017 state court postconviction petition included two new claims for relief and a new affidavit.[23]  Moreover, Ohio allows petitioners to amend their petitions at

---

[18] *Id.*

[19] *Compare* O.R.C. § 2953.21 (governing first petitions), with O.R.C. § 2953.23 (imposing additional restrictions on second or successive petitions).

[20] 28 U.S.C. § 2244(d)(2).

[21] *pending*, BLACK'S LAW DICTIONARY 1369 (11th ed. 2019).  Pending can also mean "remaining undecided." *Id.*; *see also* Carey v. Saffold, 536 U.S. 214, 219–21 (2002) (deciding that a petition remains "pending" between different levels of state-court review).  This broader definition makes sense in contexts when the state courts eventually decide a petition.  But it cannot apply in this apparently one-of-a-kind case where the court and parties abandon a petition altogether.  If it did, Adams's 2012 petition would remain "pending" today.

[22] Doc. 30 at 2 (PageID 6242).

[23] *See* 2017 Eighth Ground for Relief, Doc. 10-3 at 188 (PageID 3482) (actual-innocence claim); 2017 Ninth Ground for Relief, Doc. 10-3 at 191 (PageID 3485) (ineffective assistance's cumulative effect).

Case No. 4:21-cv-00158
GWIN, J.

any time with the court's leave.[24]  By asking petitioner to file a new, first petition—rather than amend the 2012 petition—the state court signaled that the earlier petition was no longer awaiting its decision.[25]

Still, the Court cannot dismiss a petition for its lateness if the State waives its limitations defense.[26]  "Waiver is the 'intentional relinquishment or abandonment of a known right.'"[27]   So a state does not intelligently waive its limitations defense if it merely "miscalculate[es] … the elapsed time."[28]

Although it presents a close call, the State's position here looks more like waiver than blunder.  True, the State miscalculated AEDPA's timeline by discounting the time between resentencing and Adams's 2017 petition.  But even after the Court expressed doubts about Adams's petition's timeliness, the State did not raise a limitations defense.

Finally, even if the State did not waive its limitations defense, reaching this petition's merits would best serve the interests of justice.  The Court will not exercise its discretion to dismiss the petition over both parties' insistence that the Court decide its merits.[29]

---

[24] O.R.C. § 2953.21(G)(3).

[25] *See* Freeman v. Wainwright, 959 F.3d 226, 230 (6th Cir. 2020) ("[Federal habeas courts] are not bound by the label a state court places on its actions, instead we must look to what the court actually did.").

[26] *Day,* 547 U.S. at 210.

[27] United States v. Olano, 507 U.S. 725, 733 (1993).

[28] *Day,* 547 U.S. at 202.

[29] To complete the *Day* analysis, the Court notes that dismissal would not unfairly prejudice Adams.  *See Day,* 547 U.S. at 210–11.  Although the habeas court in *Day* raised the timeliness issue sooner than this Court did here, *see id.* (magistrate judge notified parties of timeliness issue nine months after the state answered the petition and no litigation happened between the state's answer and court's notice), litigation has not yet reached a point where Adams would be prejudiced by dismissal, *see, e.g.,* De Foy v. McCullough, 301 F. App'x 177, 180 (3d Cir.2008) (prejudice when limitations defense raised 5.5 years into litigation); Souliotes v. Hedgpeth, 1:06-CV-00667 OWW, 2011 WL 4433098 (E.D. Cal. Sept. 21, 2011) (prejudice when defense raised after deciding the petition's merits).

Case No. 4:21-cv-00158
GWIN, J.

**B.    Adams's Objections**

The Court now reviews de novo Adams's seven objections to the magistrate judge's report and recommendation.[30]

AEDPA allows federal courts to grant relief for "extreme" constitutional "malfunctions" in a petitioner's state criminal proceedings.[31]  "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."[32]

AEDPA also gives state courts a chance to consider whether the state violated federal rights before an inmate may petition for federal habeas relief.[33]

Under Ohio procedural rules, appellants forfeit claims not sequentially presented to Ohio appellate courts.  Unless the defaulting petitioner shows a compelling excuse, procedurally defaulted claims become unreviewable in federal habeas actions.[34]

So, before this Court may consider Adams's claims, Adams must show that he has already exhausted his Ohio remedies by "fairly present[ing] his claim in each appropriate state court," "including a state supreme court with powers of discretionary review."[35]

To obtain relief under AEDPA for his properly presented claims, Adams must show that: (1) the state court decisions he challenges were "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"[36] and (2) the federal error "had a substantial and injurious effect

---

[30] 28 U.S.C. § 636(b)(1).

[31] Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

[32] Stewart v. Winn, 967 F.3d 534, 541 (6th Cir. 2020) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)).

[33] Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam).

[34] O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

[35] Baldwin v. Reese, 541 U.S. 27, 29 (2004).

[36] 28 U.S.C. § 2254(d).

Case No. 4:21-cv-00158
GWIN, J.

or influence in determining the jury's verdict."[37]

A federal habeas corpus petition is not a "substitute for ordinary error correction through appeal."[38]  So, the Court cannot grant habeas relief unless the state court applied federal law in an objectively unreasonable way.[39]

Most of Adams's claims fail or are procedurally defaulted.  But Adams is entitled to habeas relief on his claim that Ohio must provide a hearing to investigate one of his juror-bias claims.

The Court first explains why Adams cannot present his defaulted claims.  Then, the Court explains why it grants Adams's petition in part before disposing of his remaining claims.

### 1.    Procedural Default

Adams raises two grounds in his federal habeas petition that he did not raise in his state postconviction efforts.  Because he never raised these claims in state court, the magistrate recommends that Adams has defaulted them.  The Court agrees and overrules Adams's third and sixth objections.

First, Adams says that his trial counsel failed to effectively object to the trial court's handling of his *Batson* objections.  Adams concedes that he never presented this claim to state courts and therefore defaulted it.

Second, Adams renews his claim that allowing prosecutors to present a substitute pathologist to discuss Tenney's autopsy violated his Confrontation Clause rights.[40]  Ohio

---

[37] Brecht, 507 U.S. at 638.

[38] Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

[39] Williams v. Burt, 949 F.3d 966, 974 (6th Cir. 2020).

[40] The coroner who oversaw the autopsy died before trial.

Case No. 4:21-cv-00158
GWIN, J.

rejected this claim during his postconviction efforts because Adams failed to raise it on direct appeal. But Adams argues that he did not default this claim.

If an inmate fails to present a claim according to state procedure, "and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'"[41]

Here, the Court need not speculate whether Ohio courts *would* dismiss Adams's confrontation claim for failing to properly present it—in fact, the Ohio courts *did* dismiss it on that basis.[42] Adams failed to raise his confrontation claim on direct appeal, so the state postconviction court decided that res judicata barred his confrontation claim.

Because Adams procedurally defaulted his failure-to-object and confrontation claims, the Court can consider their merits only if Adams can overcome the default.

A petitioner can overcome procedural default in two ways. First, the Court may consider a defaulted claim if good cause to excuse the default exists and the petitioner would suffer "actual prejudice" if the federal court did not hear his claim.[43] Alternatively, if a petitioner shows that "it is more likely than not that *no* reasonable juror would have convicted him in the light of *new evidence*," his actual innocence overcomes the default.[44]

Adams does not address cause and prejudice in his objections. So the Court adopts the magistrate judge's recommendation that no cause and prejudice excuses Adams's defaults.

Adams claims, however, that his actual innocence excuses any default. Actual

---

[41] *Id.*

[42] State v. Adams, 7th Dist. Mahoning No. 18 MA 0116, 2019-Ohio-4090 ¶ 14.

[43] Shinn v. Ramirez, 142 S.Ct. 1718, 1728 (2022).

[44] Schlup v. Delo, 513 U.S. 298, 327 (1995) (emphasis added); *see also* McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief.").

Case No. 4:21-cv-00158
GWIN, J.

innocence claims face a high bar. And Adams cannot clear it. Instead, the available evidence strongly suggests Adams's guilt.

### a. Evidence of Adams's guilt

At trial, Ohio gave evidence that Defendant Adams made continued, and objected-to, harassment of victim Tenney in the months before Tenney's 1985 murder. Trial evidence showed that Gina Tenney wanted no contact with Adams and complained to others that Adams was stalking her.

Ohio also gave evidence that on the day Gina Tenney's body was discovered in the Mahoning River, Adams had possession of Tenney's car keys and ATM card. And Ohio showed evidence that Adams drove Tenney's car and tried to use Tenney's ATM card within hours of Tenney's killing.

Further, Ohio offered a potholder police found in Adams's apartment with Tenney's hair and Tenney's pubic hair on it. Adams's apartment also contained Tenney's television with Adams's fingerprints on it.

Moreover, blood-type and DNA testing implicated Adams. A vaginal swab taken from Tenney's body contained semen. Using the blood-type testing then available, police discovered that the semen could not have come from other potential suspects. But the sample matched Adams's blood type. Ohio later compared DNA from Tenney's underwear and vaginal swab with DNA samples from Adams and other suspects. The DNA testing matched Adams to the semen found with Tenney.[45]

### b. Actual innocence

Adams's actual-innocence claim boils down to three contentions. First, Adams argues

---

[45] State v. Adams, 45 N.E.3d 127, 138–145 (Ohio 2015).

Case No. 4:21-cv-00158
GWIN, J.

that other, more-likely suspects existed. Adams next points out that the vaginal DNA swab "possibly" included another person's DNA. Finally, Adams says that witnesses to Adams's ATM attempts offered some unreliable testimony.

But Adams's trial counsel presented each of these arguments at trial. Adams offers no new "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[ ]that was not presented at trial."[46]

At best, Adams offers experts' affidavits that question whether witnesses reliably identified Adams at the ATM and offer an alternative time-of-death window. But Adams's opinion evidence does not rebut Tenney's ATM card's presence in Adams's jacket. Nor does it explain why Adams's apartment contained Tenney's keys, potholder, and television. Nor does it explain how Adams might otherwise be driving Tenney's car to the ATM on the night of the murder.

Moreover, the affidavits do nothing to rebut the DNA evidence proving that the vaginal swab and Tenney's underwear contained Adams's semen.

The admissible evidence alone defeats Adams's actual-innocence claim. But when deciding actual innocence, habeas courts also consider evidence inadmissible at trial.[47] The same year police were investigating Tenney's death, Adams was convicted of a separate kidnapping, rape, and aggravated robbery.[48] Adams's conviction of another crime with similar attributes[49] makes Adams's involvement in Tenney's murder more likely.

---

[46] *Schlup*, 513 U.S. at 324.

[47] *See id.* at 327–28.

[48] Doc. 10-1 at 23 (PageID 474).

[49] Evidence in both cases suggested that each victim's hands were bound and each victim was raped. *Compare State v. Adams*, 7th Dist. Mahoning No. 86 C.A. 174, 1988 WL 126723 at *1, *with State v. Adams*, 45 N.E.3d 127, 142, 164 (Ohio 2015).

- 12 -

Case No. 4:21-cv-00158
GWIN, J.

Because any reasonable juror could find Adams guilty, actual innocence does not excuse his procedural default.

The Court now turns to Adams's not-procedurally-defaulted claims.

### 2.    Juror Bias

Adams's fourth objection relates to two juror-bias claims.  First, Adams argues that during the trial, some jurors learned of Adams's 1986 kidnapping, rape, and aggravated robbery convictions and became biased.  Second, Adams argues that a juror concealed her prior sexual assault during voir dire.

With his report and recommendation, the magistrate judge recommended finding that both of Adams's juror-bias claims lacked merit.  The Court agrees with the recommendation that Ohio reasonably denied postconviction relief for Adams's voir dire omission claim.

But clearly established federal law required Ohio to provide an evidentiary hearing to decide whether knowledge of Adams's prior conviction sufficiently biased the jurors. Because Ohio "skipped a constitutional step,"[50] the Court sustains this objection and grants conditional habeas relief.

### a.    Maloney's Affidavit

Adams submits an affidavit from juror Terrence Maloney to support his claim that jurors learned of his rape, kidnapping and robbery conviction.  In that affidavit, Maloney says that shortly after the jury decided to recommend the death penalty, a juror approached juror Maloney at lunch and said, "if it made [Maloney] feel better, Bennie Adams was in prison for rape for 17 years."  After delivering the verdict, most jurors went to get dinner

---

[50] Cunningham v. Shoop, 23 F.4th 636 (6th Cir. 2022), cert. denied, 143 S. Ct. 37 (2022).

Case No. 4:21-cv-00158
GWIN, J.

together.  Maloney says that at dinner, a second juror approached Maloney and said that she

"had been dying to tell [Maloney] that Bennie Adams had been in prison for rape for years."[51]

Maloney also says that juror Jeanne Sutton cried while discussing Tenney's rape

during deliberations because Sutton had also been raped.[52]  During voir dire, Sutton did not

disclose any rape when asked whether she had been the victim of a violent crime.

### b.    Extrajudicial Information

The Sixth Circuit's recent decision in *Cunningham v. Shoop* requires the Court to

grant Adams conditional habeas relief.

In the *Cunningham* habeas corpus petition, Jeronique Cunningham claimed that

Nicole Mikesell, a trial juror in his case who was employed as a social worker, had learned

prejudicial information about Cunningham from other social workers.[53]  The other social

workers had purportedly told *Cunningham* juror Mikesell they "were afraid of" the

defendant.[54]  But because Cunningham had not shown whether Mikesell learned of

Cunningham's reputation in time to impact the jury's deliberations, the state court had

denied postconviction relief.[55]

The Sixth Circuit decided that the state court had unreasonably applied *Remmer v.*

*United States*.[56]  *Cunningham* explained that when a petitioner raises "a colorable claim of

---

[51] Doc. 10-3 at 225–27 (PageID 3519–21).

[52] *Id.* at 227 (PageID 3521); *see also id.* at 242–43 (PageID 3536–37) (affidavit of Adams's counsel in which Attorney Rigby recounts a 2017 interview with Maloney).

[53] *Cunningham*, 23 F.4th at 645.

[54] *Id.*

[55] *Id.* at 645–46.

[56] Remmer v. United States, 347 U.S. 227 (1954).

Case No. 4:21-cv-00158
GWIN, J.

extraneous influence," a court must order a *Remmer* hearing to give the petitioner "'the opportunity to prove actual bias.'"[57]  And when the record does not show precisely when the juror discovered extrajudicial information, a *Remmer* hearing provides "the appropriate forum ... to decide the [information's] nature, timing and content ... ."[58]

This case closely tracks *Cunningham*.  Adams offers evidence that at least two jurors knew about Adams's prior rape conviction immediately after the penalty-phase deliberations. But the Ohio court denied postconviction relief, reasoning that the jurors might not have discovered Adams's conviction until after the jury rendered its guilt-phase verdict.[59]

Here, too, the Ohio court unreasonably applied *Remmer*.  By attaching Juror Maloney's affidavit to his postconviction petition, Adams raised a colorable claim that information about his prior conviction could have biased at least two jurors.[60]  Although Adams has not yet proven when the jurors learned about his prior rape conviction and has not proven what, if any, impact any prior conviction knowledge may have had, *Remmer* gives Adams a chance for an evidentiary hearing.

To remedy Ohio's unreasonable application of federal law, the Court will grant habeas relief unless Ohio holds a *Remmer* hearing within 150 days of this order.[61]

---

[57] *Id.* at 651 (quoting Smith v. Phillips, 455 U.S. 209, 215 (1982)).  *See also Remmer*, 347 U.S. at 229 ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial.").

[58] *Id.* at 651–52; *see also* Remmer v. United States, 350 U.S. 377, 379–80 (1956) ("It was the paucity of information relating to the entire situation coupled with the presumption which attaches to the kind of facts alleged by petitioner which, in our view, made manifest the need for a full hearing.").

[59] State v. Adams, 7th Dist. Mahoning No. 18 MA 0116, 2019-Ohio-4090 at *11 ("Appellant has failed to produce any evidence that any of the jurors knew of his rape conviction before reaching their verdict.").

[60] *See Cunningham*, 23 F.4th at 651.

[61] *See id.* at 662 (citing Ewing v. Horton, 914 F.3d 1027, 1034 (6th Cir. 2019) (district court should "conditionally grant[] habeas relief unless the State takes steps to conduct a proper evidentiary hearing on [petitioner's] claim of juror misconduct within a reasonable period set by the district court's order.")).

Case No. 4:21-cv-00158
GWIN, J.

### c.    Voir Dire Omission

Because Ohio reasonably decided that Juror Sutton did not intentionally withhold information from the trial court and otherwise remained unbiased, Adams's voir dire omission claim fails.

To decide whether a juror's voir dire omission violated a defendant's impartial-jury guarantee, courts apply a two-step test.  First, a court decides whether the juror did not honestly answer a material voir dire question.  Second, the court asks whether an honest response to the same question would have supported a for-cause challenge to empanel the juror. [62]  Further, although jurors may have many reasons for omitting information during voir dire, "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."[63]

The Sixth Circuit's *Dennis v. Mitchell*[64] decision guides the Court here.  During voir dire to select Adremy Dennis's trial jury, a juror said that she had never been the victim of a violent crime.[65]  But the parties later discovered that the juror had been sexually assaulted before the trial.[66]  When questioned, the juror explained that she did not mention the assault during voir dire because she thought the assault did not fit the court's definition of "violent."[67]

The Ohio Supreme Court ultimately upheld Dennis's conviction.  The state court explained that the juror had not intentionally deceived the court during voir dire.  And the

---

[62] *See* McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).

[63] *Id.*

[64] 354 F.3d 511 (6th Cir. 2003).

[65] *Id.* at 518.

[66] *Id.*

[67] *Id.*

Case No. 4:21-cv-00158
GWIN, J.

juror had testified that she could set aside her feelings to deliberate impartially.[68]

By upholding Dennis's conviction on these facts, the Sixth Circuit explained, the state court had reasonably applied federal law.[69]

Here, the Ohio court reasonably decided that Juror Sutton did not fail to answer a material question truthfully. In an affidavit, Juror Sutton swore that she did not consider her rape a crime because she never reported it and no criminal proceedings had resulted from it. Sutton believed that she answered the question truthfully and did not intentionally deceive the trial court.[70]

Further, Juror Sutton averred that her experience did not impact her deliberations in Adams's case.[71] The state court found that Sutton was not biased and Adams presents no evidence to clearly and convincingly rebut that finding.[72] So the state court reasonably denied Adams's voir dire omission claim.

### 3. Suppression Claim

Adams next says the Court should permit him to challenge the state trial court's decision to deny suppressing evidence found in his jacket. On the day Gina Tenney's body was found, police found Tenney's ATM in Adams's coat. But because a federal habeas court cannot consider his illegal-search claim, the Court overrules this objection.

Federal courts generally may not grant habeas relief because a state court admitted evidence that should have been suppressed under the exclusionary rule.[73] A narrow

---

[68] *Id.* at 519–20 (quoting State v. Dennis, 683 N.E.2d 1096, 1103 (Ohio 1997)).

[69] *Id.* at 521.

[70] State v. Adams, 2019-Ohio-4090, 2019 WL 4694913, at *11–12 (7th Dist. Ct. App.).

[71] *Id.*

[72] *See Dennis*, 354 F.3d at 521.

[73] *See generally* Stone v. Powell, 428 U.S. 465, 489–95 (1976) (deciding that the exclusionary rule's deterrence

Case No. 4:21-cv-00158
GWIN, J.

exception exists, however, if the state did not provide "an available avenue ... to present [a suppression] claim to the state courts."[74]  But the federal habeas court cannot make "an inquiry into the adequacy of the procedure actually used to resolve that particular claim."[75]

Here, Ohio's courts allowed Adams to move to suppress the evidence from his jacket. Ohio also allowed Adams to appeal the trial court's decision denying that motion.  Adams's claim therefore challenges only Ohio's procedure's adequacy—which this Court may not review.[76]

### 4.    Facts Recitation

In his first objection, Adams argues that the magistrate's report should not have adopted the Ohio Supreme Court's factual findings.

Federal habeas courts presume that state courts' factual findings are correct unless the petitioner rebuts them by clear and convincing evidence.[77]  Because Adams presents no evidence that clearly and convincingly rebuts the Ohio Supreme Court's factual findings, this objection fails.

Adams first attacks the state court's findings with the same evidence he says supports his actual-innocence claim.  But as already explained, the evidence of Adams's guilt strongly outweighs this evidence.

Similarly, while Juror Maloney's affidavit supports Adams's prima facie juror-bias claim, it does not—without more—clearly and convincingly rebut the state court's

---

rationale did not apply in the habeas context).

[74] Good v. Berghuis, 729 F.3d 636 (6th Cir. 2013).

[75] Id.

[76] See id. at 640.

[77] Franklin v. Bradshaw, 695 F.3d 439, 447 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

Case No. 4:21-cv-00158
GWIN, J.

factfinding.

Finally, Adams suggests that because his prosecutors may have committed misconduct in other cases, they committed misconduct in his case. But he offers no evidence of any prosecutorial misconduct in this case.

### 5. *Batson* Claims

In his second objection, Adams says that the magistrate judge incorrectly recommends that Adams's *Batson* claims as meritless. Because the state court reasonably applied *Batson*, the Court overrules this objection.

When a defendant claims a *Batson* violation, courts follow a three-step procedure:

1. The defendant must make a prima facie case that the prosecutor struck a juror based on race.

2. If the defendant satisfies step one, the prosecutor must provide a race-neutral explanation for striking the juror.

3. The court decides whether the defendant carried his burden to prove purposeful racial discrimination based on whether the prosecutor's race-neutral explanations are credible.[78]

Because the trial court makes a factual decision about the prosecutor's race-neutral explanation's credibility, reviewing courts largely defer to the trial court's decision.[79] Federal habeas courts, in turn, presume state courts' decisions regarding *Batson* claims are correct unless clear and convincing evidence rebuts their findings.[80]

### a. Juror 31

During voir dire, prosecutors and the trial judge noted that Juror 31 seemed confused and appeared to contradict herself when answering questions. A review of Juror 31's voir

---

[78] *See* Batson v. Kentucky, 476 U.S. 79, 96–98 (1986).

[79] *See* Hernandez v. New York, 500 U.S. 352 (1991).

[80] *See* Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir. 2003).

Case No. 4:21-cv-00158
GWIN, J.

dire supports this.

After twice unsuccessfully challenging Juror 31 for cause, prosecutors used a peremptory challenge to strike Juror 31.  Defense counsel raised a *Batson* challenge.  In response, prosecutors stated they peremptorily challenged Juror 31 because she seemed confused and gave inconsistent question responses. The trial court found that Juror 31's confusion and failure to fully answer the voir dire questionnaire provided credible, race-neutral reasons to strike.[81]

Adams says the trial court struck Juror 31 based on her "demeanor" without making on-the-record findings about her demeanor.  By affirming the trial court's decision, Adams says, the state court unreasonably applied federal law.

Adams is wrong.  A trial judge may accept a demeanor-based explanation even if the judge has no "personal recollection of the juror's demeanor … ."[82]  Instead, a trial judge should decide a race-neutral explanation's credibility by assessing the *prosecutor's* demeanor—not the juror's.[83]  So, the Ohio court reasonably deferred to the trial court's decision that the prosecutor's race-neutral explanation was credible.

### b.    Juror 11

During voir dire, Juror 11 said she believed a defendant's mental state matters when deciding whether to administer the death penalty.  In response, the prosecutor explained that the State did not have to prove motive during the penalty phase. [84]

Defense counsel raised a *Batson* objection to striking Juror 11, that the trial court

---

[81] Doc. 10-8 at 167–68 (PageID 5103–04).

[82] Thaler v. Haynes, 559 U.S. 43, 49 (2010).

[83] *Id.* (citing Hernandez v. New York, 500 U.S. 352, 362 (1991)).

[84] Doc. 10-5 at 106–07 (PageID 4444–45).

- 20 -

Case No. 4:21-cv-00158
GWIN, J.

overruled.  The prosecutor's race-neutral explanation included, among other reasons, that Juror 11 "seemed very disappointed" that prosecutors did not have to prove "motive."[85]

Adams says that the prosecutor mischaracterized the juror's insistence on proving mental state as insistence that the State should prove motive.  So, in Adams's view, the prosecutor offered an implausible race-neutral explanation.  And the state court, according to Adams, unreasonably applied federal law when it affirmed the trial court's decision.

Not so.  Even assuming the prosecutor misunderstood the juror's answer, the race-neutral explanation included several other reasons why Juror 11 should be excused—namely, that the juror "wasn't listening" during part of the interview, watched "court shows," and otherwise did not "like[] what [the prosecutor] had to say."[86]

Nothing in the record refutes the additional race-neutral reasons to excuse Juror 11.[87] So, the Ohio court reasonably applied federal law when it refused to second-guess the trial court's acceptance of those race-neutral reasons.

### 6.    Ineffective Assistance

Adams's remaining objection challenges the magistrate judge's recommendation that the state court reasonably decided Adams's ineffective-assistance-of-counsel claim. The Court agrees with the magistrate judge and overrules this objection.

Adams argues that federal law required his trial counsel to hire an expert to challenge witnesses' identification testimony.  At trial, identification witnesses testified that they saw Adams driving Tenney's car and using an ATM the evening of Tenney's murder.

---

[85] Doc. 10-8 at 163–64 (PageID 5099–5100).

[86] *Id.*

[87] *See Thaler*, 559 U.S. at 48–49 (discussing *Snyder v. Louisiana, 552 U.S. 472 (2008)*).

Case No. 4:21-cv-00158
GWIN, J.

Before qualifying for habeas relief based on ineffective trial counsel, a petitioner must clear several hurdles.  First, the petitioner must show that counsel erred so seriously that counsel failed to function "as the 'counsel' guaranteed ... by the Sixth Amendment."[88] Second, the petitioner must show prejudice.[89]

Further, ineffective-assistance claims face an especially high bar when raised in a collateral attack on a state conviction.  The Court "owe[s] deference to both [petitioner's] counsel *and* the state court."[90]  And the Court affords "a 'strong presumption' of reasonableness" to trial counsel's strategic decision about whether to retain an expert.[91]

Facing this high bar, Adams's claim falls short.

The identification witnesses presented somewhat mixed testimony.  Both witnesses described the person they saw as shorter than Adams.  And although both witnesses identified Adams at trial, one of the witnesses identified someone other than Adams at an earlier in-person lineup.

Since some of the testimony favored Adams, defense counsel reasonably opted for a scalpel rather than a sledgehammer.  Counsel cross-examined the witnesses to challenge only certain unhelpful testimony rather than offering an expert's opinion that the witnesses' testimony was generally unreliable.[92]  So, the state court reasonably decided that Adams's counsel's tactics met any constitutional requirements.[93]

---

[88] Seymour v. Walker, 224 F.3d 542, 550 (6th Cir. 2000) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

[89] *Id.*

[90] Dunn v. Reeves, 141 S.Ct. 2405, 2411 (2021).

[91] *Id.* (quoting Harrington v. Richter, 562 U.S. 86 (2011)).

[92] ("[Expert] testimony would have ... aided [jurors] in determining the appropriate weight to place on the [identification] testimony ... .").

[93] State v. Adams, 7th Dist. Mahoning No. 18 MA 0116, 2019-Ohio-4090, at *13.

- 22 -

Case No. 4:21-cv-00158
GWIN, J.

Moreover, Adams cannot prove prejudice.  Even setting the witnesses' testimony aside, the State presented sufficient evidence to convict Adams—including Adams's admission that he owned the coat in which police found Tenney's bank card and Tenney's car keys recovered from Adams's apartment.  And police found the bank card and Tenney's keys on the day after the murder and on the day Tenney's body was found.

## C.    Discovery

The Court now turns to Adams's appeal from the magistrate judge's decision to deny discovery.  The Court affirms a magistrate judge's non-dispositive discovery order unless the order is "clearly erroneous" or "contrary to law."[94]

Because the magistrate judge properly applied AEDPA's discovery restrictions, the Court affirms.

Adams's claims adjudicated on the merits in state court do not qualify for discovery unless the existing state record demonstrates that the state court unreasonably applied federal law.[95]

Here, the magistrate judge properly denied discovery for these claims.[96]  The state court reasonably resolved Adams's *Batson* and failure-to-present-an-expert claims on the merits.  And although Adams presents a prima facie juror-bias case, the Ohio trial court, rather than this Court, must hold the *Remmer* hearing to interview jurors.  Finally, Adams cannot raise his suppression claim in this petition at all, let alone obtain discovery on that claim.

---

[94] 28 U.S.C. § 636(b).

[95] *See* Cullen v. Pinholster, 563 U.S. 170, 183 (2011) (quoting Schriro v. Landrigan, 550 U.S. 465 (2007)) ("[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'").

[96] Doc. 20 at 11-12 (PageID 6134-35).

Case No. 4:21-cv-00158
GWIN, J.

That leaves Adams's defaulted claims, which qualify for discovery only if Adams shows good-cause for the discovery.[97]

Adams concedes that any discovery request related to his defaulted ineffective-assistance claim rises and falls with his *Batson* merits claim.[98] So, because the Court finds no *Batson* violation—and therefore no prejudice for failing to object—Adams cannot justify discovery for this claim.

Finally, Adams does not appeal the magistrate judge's decision to deny discovery for his defaulted confrontation claim.

## CONCLUSION

For the foregoing reasons, the Court conditionally **GRANTS** a habeas corpus writ. Adams may apply for release from custody unless Ohio holds a *Remmer* hearing within 150 days of this order. The Court **DISMISSES** Adams's second and fifth grounds for relief as procedurally defaulted. Further, the Court **DISMISSES** Adams's fourth ground for relief as not cognizable. The Court **DENIES** Adams's remaining grounds for relief. Finally, the Court **AFFIRMS** the magistrate judge's decision to deny discovery.

Further, the Court certifies, under 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and no basis exists upon which to issue a certificate of appealability.[99]

---

[97] RULES GOVERNING § 2254 CASES 6(a); Williams v. Bagley, 380 F.3d 932 (6th Cir. 2004) (quoting Bracy v. Gramley, 520 U.S. 899 (1997)) ("[A] court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief.'").

[98] Doc. 19 at 8 (PageID 6113).

[99] 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

- 24 -

Case No. 4:21-cv-00158
GWIN, J.

       IT IS SO ORDERED.


Dated: February 13, 2023             *s/     James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE